IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

| | |
|---|---|
| UNITED STATES OF AMERICA<br><br>v.<br><br>OBINNA OGBU,<br><br>   *Defendant.* | Case No. 1:24-cr-255 (TSC) |

### GOVERNMENT'S SENTENCING MEMORANDUM
### AND MOTION FOR A DOWNWARD DEPARTURE

The United States of America, through the undersigned counsel, respectfully submits the following sentencing memorandum and motion for a downward departure in the above-captioned matter. The Defendant, Obinna Ogbu, pled guilty to participating in a long-term conspiracy in which two businesses associated with him improperly obtained over $2 million in funds originating from local government contracts. The crime was an affront to the rule of law and did significant damage to the reputation and morale of local District of Columbia government agencies and personnel. Yet Ogbu deserves a significant departure for providing timely and substantial assistance. Unlike his co-conspirators, he has demonstrated sincere remorse and a desire to make amends for his criminal conduct. For those and other reasons described below, the Government requests that the Court impose a 4-month sentence of incarceration, to be followed by two years of supervised release, and imposition of the parties' agreed-upon forfeiture and restitution.

  **I.**  **RELEVANT BACKGROUND**

    a. **Ogbu's Criminal Conduct**

The Government has previously described in detail the conspiracy to which Ogbu pled guilty. *See, e.g.*, *United States v. Oli*, Case No. 24-cr-275 (TSC), ECF No. 27; *United States v. Crowell*, Case No. 24-cr-262 (TSC), ECF No. 15. Ogbu's criminal conduct is also summarized

by the admissions he made in the Statement of Offense that accompanied his guilty plea. *See* ECF No. 7.

The conspiracy originated with Ogbu's relationship to Ifediora Oli and Ogbu's position in the information technology ("IT") department of the Washington Metropolitan Area Transit Authority ("WMATA"). *See id.* at ¶ 8.[1] In 2018, Ogbu and Oli agreed to use Ogbu's position at WMATA and Ogbu's access to Bridgette Crowell to steer WMATA contracting opportunities to Oli's business, Highbury Global Group, Inc. ("Highbury"). *Id.*[2] They succeeded. Between 2018 and 2023, Ogbu helped direct nearly $500,000 in WMATA contracting business to Highbury. *Id.* at ¶ 18. For this part of the conspiracy, Ogbu's corruption inside of WMATA is what made Highbury's elicit contracts possible. *Id.* at ¶¶ 9-17. In exchange, Oli gave money and other things of value to Ogbu. *Id.* at ¶ 18.

The other, more lucrative, phase of the conspiracy depended on Crowell's misuse of her position at the District of Columbia's Office of Contracting and Procurement ("OCP"). Because of Crowell's corruption, the District paid Highbury over $600,000 for its performance on a fraudulently obtained contract. *Id.* at ¶ 23. Crowell then fed inside information to Ogbu to help a private business operated by Ogbu with Crowell's assistance, the Nupath Company ("Nupath"), get just under $1 million worth of District government contracts. *Id.* at ¶¶ 30-32. Throughout that period, Ogbu gave Crowell things of value, including as much as $10,000 in cash per month, $20,000 to help Crowell get a new car, and $35,000 to help Crowell with closing costs for her home. *Id.* at ¶ 35.

Ogbu has also admitted that he took multiple steps to conceal the conspiracy and the benefits he received from it. *Id.* at ¶ 36.

---

[1] In Ogbu's Statement of Offense, Oli is referred to as "Co-Conspirator 1."
[2] In Ogbu's Statement of Offense, Crowell is referred to as "Co-Conspirator 2."

### b. Procedural Background

The federal investigation into this matter began after WMATA's Office of Inspector General ("WMATA-OIG") was informed of potential misconduct by Ogbu at WMATA. As more information was learned, WMATA-OIG and the Federal Bureau of Investigation ("FBI") were joined in their investigative efforts by the District of Columbia's Office of the Inspector General ("DC-OIG").

Federal investigators approached Ogbu and his two co-conspirators while executing court-approved search warrants at their respective residences in February 2024. During the initial approach, all three co-conspirators denied being part of the conspiracy. But within days of the approaches, Ogbu, through his counsel, reached out to the Government and expressed his desire to accept responsibility for his actions and assist the Government's investigation. Shortly thereafter, Ogbu participated in lengthy debriefing sessions with the Government. As described in further detail below, Ogbu's assistance was timely and substantial, and he deserves significant credit for his actions since early February 2024.

On May 24, 2024, Ogbu entered a guilty plea to a one-count Information charging him with conspiracy to commit money, property, and honest services wire fraud, in violation of 18 U.S.C. § 1349. He was the first of the three conspirators to accept responsibility and enter a guilty plea in this matter. Crowell and Oli entered guilty pleas afterwards.

On October 21, 2024, the Court sentenced Crowell to seven-months incarceration, to be followed by two years of supervised release, in addition to the parties agreed-upon restitution and forfeiture. Oli's sentencing is scheduled for October 25, and Ogbu's is scheduled for October 28.

## II.     SENTENCING FRAMEWORK

To determine Ogbu's sentence, the Court should first calculate the applicable federal advisory guideline range for the offense under the United States Sentencing Guidelines ("U.S.S.G."). *See Gall v. United States*, 552 U.S. 38, 49-50 (2007). Because that guideline range is meant to "secure nationwide consistency" and is "the product of careful study based on extensive empirical evidence derived from the review of thousands of individual sentencing determinations," that range should serve as an "initial benchmark" for the sentence. *Id.* at 47-50.

After determining the guideline range, the Court must consider the various factors set forth in 18 U.S.C. § 3553(a). The factors include: the nature and circumstances of the offense; the history and characteristics of the defendant; the need for the sentence to reflect the seriousness of the offense and promote respect for the law; the need for the sentence to afford adequate deterrence; and the kinds of sentences available and need to avoid unwarranted sentence disparities among defendants with similar records who have been found guilty of similar conduct. *See generally* 18 U.S.C. § 3553(a). The inquiry is focused on fashioning a sentence that is "sufficient, but not greater than necessary" to advance the § 3553(a) factors, which in turn reflect the purposes of punishment. *Id*.

## III.    AGREED-UPON GUIDELINE ANALYSIS

The parties agree on the U.S.S.G. analysis applicable in this case. The Probation Department also agrees with that analysis. *See* ECF No. 14 at 12-13.

The applicable guidelines are:

| | | |
|---|---|---|
| Base Offense Level | U.S.S.G. §2B1.1(a)(1) | 7 |
| Loss Exceeding $150,000[3] | U.S.S.G. §2B1.1(b)(1)(F) | +10 |
| Abuse of Position of Public Trust | U.S.S.G. §3B1.3 | +2 |
| Obstructing or Impeding Justice | U.S.S.G. §3C1.1 | +2 |
| Acceptance of Responsibility | U.S.S.G. §3E1.1 | -2 |
| Timely Notice of Acceptance | U.S.S.G. §3E1.1 | -1 |
| **Total Offense Level** | | **18** |

Ogbu has one criminal history point and is therefore a Criminal History Category I. A Total Offense Level of 18 at Criminal History Category I results in a guideline sentence of 27-33 months.

## IV. DOWNWARD DEPARTURE FOR SUBSTANTIAL ASSISTANCE

The Government moves for a downward departure because of Ogbu's "substantial assistance in the investigation or prosecution of [multiple other people who have] committed an offense." *See* U.S.S.G. §5K1.1. Ogbu is fully deserving of this departure.

A court assessing whether a departure under §5K1.1 is warranted considers factors such as: (1) "the court's evaluation of the significance and usefulness of the defendant's assistance, taking into consideration the government's evaluation of the assistance rendered"; (2) "the truthfulness, completeness, and reliability of any information or testimony provided by the defendant"; (3) "the nature and extent of the defendant's assistance"; (4) "any injury suffered, or any danger or risk of injury to the defendant or his family resulting from his assistance"; and (5)

---

[3] The parties agree that the loss amount attributable to Ogbu's criminal conduct is more than $150,000. The Government informed the Defendant that in light of his pre-indictment guilty plea, the Government would not take further investigative steps to determine how much more than $150,000 the loss amount should be.

"the timeliness of the defendant's assistance." U.S.S.G. §5K1.1(a)(1)-(5). These factors support the departure in Ogbu's case.

Within days of the Government's investigation going overt, Ogbu expressed a sincere desire to cooperate. The timeliness of Ogbu's assistance was matched by its utility. Just weeks after federal investigators executed the search warrants on the conspirators' homes, Ogbu participated in multiple lengthy debriefing sessions with the Government. In those meetings, Ogbu provided truthful, complete, and reliable information about his and his co-conspirators' criminal conduct.

Shortly after the Government met with Ogbu (which was shortly after the Government's investigation went overt), the Government learned that Oli was going to travel to Nigeria—a trip that could have allowed Oli to flee prosecution altogether. Based in part on Ogbu's exceptionally timely and useful assistance, the Government was able to immediately draft a comprehensive affidavit in support of a criminal complaint and warrant for Oli's arrest. Regardless of Oli's initial reasons for wanting to travel to Nigeria, his arrest prevented him from trying to evade prosecution by remaining there.

Ogbu entered his guilty plea in open court after Oli's arrest. The combination of Oli's arrest and Ogbu's guilty plea surely had a significant effect on Ogbu's co-conspirators' views of this case. Upon reading the affidavit in support of Oli's arrest warrant, they likely understood that Ogbu was cooperating with the Government. Upon seeing Ogbu enter a guilty plea, they had to grapple with the fact that they would not be able to present a unified front in defense of the case against them.

Ogbu's cooperation had a significant effect on the swift and successful prosecutions of his co-conspirators. The conspiracy in this case went on for over half a decade. But, tellingly, within

three months of Ogbu first debriefing with the Government, every member of the conspiracy had entered a pre-indictment guilty plea. Those dispositions saved the Government and the Court significant resources. The Government had amassed a lot of evidence of the conspirators' guilt before Ogbu started assisting the investigation. But his assistance should be credited for the fast resolutions of what could have been lengthy discovery, pre-trial, and trial processes in a multi-defendant white collar conspiracy prosecution. For example, the Government suspects that at least co-conspirator Oli would have been very hesitant to accept responsibility had Ogbu's cooperation not been surmised following Oli's arrest on the criminal complaint.

Because Ogbu's assistance in this matter was significant, exceedingly timely, truthful, reliable, and useful, Ogbu should receive a significant downward departure under §5K1.1.

V.      THE GOVERNMENT'S SENTENCING RECOMMENDATION

In consideration of the § 3553(a) factors and the application of a downward departure under §5K1.1, the Government recommends that Ogbu be sentenced to a 4-month period of incarceration, to be followed by two years of supervised release, plus imposition of the parties' agreed-upon forfeiture and restitution. In making this recommendation, the Government gives considerable weight to: the relatively equal levels of culpability across the three co-conspirators when the conspiracy is looked at in its entirety; Ogbu's timely and substantial assistance; Ogbu being the first conspirator to enter an unequivocal pre-indictment guilty plea; and the sentence imposed on co-conspirator Crowell.[4] Ogbu clearly deserves more credit than his co-conspirators and should receive the lowest sentence of the three—even though the nature of his criminal conduct still militates against a sentence of probation.

---

[4] As of this writing, co-conspirator Oli has not been sentenced.

This was a serious conspiracy in which three co-conspirators sought to enrich themselves at the expense of corrupting government agencies and harming the public trust. It went on for years. As the Government has previously explained—and as reflected in Ogbu's Statement of Offense—the most lucrative aspects of the conspiracy were the result of Crowell abusing her position at OCP. But the conspiracy began through Ogbu misusing his position at WMATA.

Despite being entirely nonviolent, this was not a victimless crime. Government agencies, the employees within them, and the District's citizens suffer when public officials and contractors conspire to corrupt government processes for personal profit. That was the result in this case. Such crimes damage the rule of law and must be deterred.

Ogbu's conduct prior to 2024 stands in stark contrast to his conduct after he was approached by federal investigators. To Ogbu's credit, virtually immediately after federal agents left his home in February 2024, he started taking steps to make amends for his past bad acts. He was the first conspirator to accept responsibility. He offered timely and substantial assistance. His actions following February 2024 were instrumental in allowing the Government to resolve expeditiously the cases against him and his co-conspirators prior to seeking an indictment against any of them.

As of this writing, the only conspirator to be sentenced is Crowell. The Government sought a guideline sentence of 21- to 27-months in her case. Largely due to the significant collateral consequences of her conviction and incarceration, she received a sentence of 7-months imprisonment. Because of his cooperation, Ogbu deserves a sentence lower than that.[5]

---

[5] The Probation Department recommends that Ogbu receive the highest sentence of the three conspirators. This recommendation seems focused on the Justice Sentencing Information (JSIN) data and Ogbu's slightly higher offense level. The recommendation does not consider Ogbu's substantial assistance and it fails to grapple with the comparable levels of culpability among the three conspirators.

Finally, and importantly, Ogbu appears sincerely and palpably remorseful. This also differentiates him from his co-conspirators.

## VI. FORFEITURE & RESTITUTION

As part of his plea agreement with the Government, Ogbu has agreed to forfeit: (1) a black Mercedes sedan purchased in December 2022 and bearing Maryland license plate No. 9FF4244; and (2) a black Ford Bronco Sport purchased in October 2021 and bearing Maryland license plate No. 8EV9008.[6] The parties have agreed to a joint proposed preliminary forfeiture order, which is attached to this memorandum for the Court's convenience.

Ogbu also agreed to pay restitution in the amount of $100,000 to the District of Columbia and $50,000 to WMATA. The obligation to pay $100,000 to the District will be joint and several with both Oli and Crowell. The obligation to pay $50,000 to WMATA will be joint and several with Oli.

Beyond the above, the Government is not seeking further forfeiture, restitution, or a fine in this matter.

---

[6] Co-conspirator Crowell also agreed to forfeit this same vehicle, which was largely paid for by Ogbu but physically possessed by Crowell.

## VII. CONCLUSION

Ogbu's crime was serious. But his acceptance of responsibility was fast and fulsome, and his assistance in the prosecution of his co-conspirators was timely and significant. Primarily for his post-offense conduct, he deserves the lowest sentence among the three conspirators in this case. For those reasons, and as described above, the Government recommends that Ogbu be sentenced to four-months incarceration, to be followed by two years of supervised release, and with the imposition of the parties' agreed-upon forfeiture and restitution.

Respectfully submitted,

MATTHEW M. GRAVES
UNITED STATES ATTORNEY

By: */s/ Timothy Visser*
TIMOTHY VISSER (DC Bar No. 1028375)
Assistant United States Attorney
601 D Street, N.W.
Washington, D.C. 20530
(202) 252-2590
timothy.visser@usdoj.gov